(C. D. 891)

MUTUAL SUPPLY CO. *v*. UNITED STATES

United States Customs Court, First Division

(Decided November 9, 1944)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: Paragraph 5 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 5) is as follows:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

*Quong Yuen Shing Co.* v. *United States*, 31 C. C. P. A. 43, C. A. D. 247, limited the scope of said paragraph in holding that "the mixtures provided for in paragraph 5 [*supra*] include only those mixtures which have constituent compounds, no one of which compounds is itself excluded from the paragraph by a specific provision for it elsewhere in the tariff act." In doing so, a Chinese commodity, known as ve-tsin and used for flavoring soups and gravies, which contained, as a "substantial component part thereof," 16.75 per centum salt, a product *eo nomine* provided for in paragraph 81 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 81), was excluded from its provisions, the merchandise being classified as a nonenumerated manufactured article under paragraph 1558 of said act (19 U. S. C. 1940 ed. § 1001, par. 1558), dutiable thereunder at 20 per centum ad valorem, as claimed by the importer.

Plaintiff seeks to invoke the same statutory construction in the present case, which brings for determination the tariff classification of a Japanese product known as ajinomoto whose chief use is as a condiment for food, and whose chemical analysis, like the ve-tsin involved in the cited case, reveals the presence of salt. The ingredients of both substances, with their relative content in terms of percentage, are as follows:

| | Ajinomoto (Instant Mdse.) | Ve-tsin (Quong cases) |
|---|---|---|
| Monosodium glutamate | 93. 60% | 82. 15% |
| Sodium chloride (salt) | . 90% | 16. 75% |
| Moisture | 5. 50% | 1. 10% |

The merchandise in question was assessed with duty as a chemical compound under paragraph 5, *supra*, and is claimed to be classifiable under said paragraph 1558.

The case is before us on a stipulation wherein the parties agree that the ajinomoto under consideration is in all material respects the same as that passed upon in *North Coast Importing Co. et al.* v. *United States*, 24 C. C. P. A. 182, T. D. 48644, and that a portion of the record, so far as it relates to ajinomoto, in said case be incorporated here. Under the terms of the stipulation, the evidence in the present case consists of a sample of the instant merchandise (exhibit 1); the testimony of two commercial witnesses introduced by plaintiff, as well as the testimony of two analytical chemists who appeared on behalf of defendant; a magazine article (exhibit 2) published in "Industrial and Engineering Chemistry" (Vol. 21, No. 10, page 984) of October 1929, entitled "Monosodium Glutamate As A Chemical Condiment"; letters patent (exhibit 3) describing the isolation by electrolysis of glutamic acid from albuminous substances, and letters patent (exhibit 4) relating to "nutritive and flavoring substances containing salts of glutamic acid as essential component," all of which were offered by defendant.

The contention of counsel for defendant that the doctrine of *stare decisis* is applicable because "the issue presented in this case upon the same record was decided adversely to the importer in the case of *North Coast Importing Co.* v *United States*, 24 C. C. P. A. 182," is untenable. It is true that the collector's classification and plaintiff's claim are the same in both, but the premise upon which the previous case was based is not analogous to the question before us in this case. In the *North Coast Importing Co.* case, *supra*, plaintiff's contention was based on the theory that the chemical compounds and chemical mixtures contemplated under said paragraph 5, were limited to other than those used for food purposes, and that therefore ajinomoto, a commodity chiefly used for flavoring food, was excluded therefrom. In adhering to the collector's classification of the merchandise as a chemical compound, the court relied largely on legislative history of

the paragraph. The instant case turns on the effect to be given the salt content (nine-tenths of 1 per centum) of the ajinomoto in question, i. e., whether its presence warrants application of the judicial interpretation announced in the *Quong* case, *supra*. It is important to note that in the *North Coast Importing Co.* case, *supra*, it was stipulated between the parties that the difference in salt content between the ve-tsin and ajinomoto there involved was, for the purposes of that case, immaterial. Here, it is the crux of the case. Clearly, the issue before us materially differs from that presented in the incorporated case.

The *Quong* case, *supra*, was based on the record taken in *Walter T. Ueland, Quong Yuen Shing & Co.* v. *United States*, 73 Treas. Dec. 90, T. D. 49348, affirmed in 27 C. C. P. A. (Customs) 56, C. A. D. 62, which was incorporated after the court was satisfied that the merchandise in both cases was identical in character. The evidence in the *Ueland* case, *supra*, included an analyst's report stating that the merchandise consisted of "mono sodium glutamate mixed with 17.2% sodium chloride. Both are chemical compounds. A little moisture is present," and the uncontradicted testimony of a qualified chemist to the effect that the sodium chloride (salt) was not combined with the monosodium glutamate, the two substances having been physically mixed. The same witness distinguished between a chemical mixture and a chemical compound, explaining that in the former the constituents can be separated by physical means, whereas the elements of the latter lose their individual identity and cannot be separated. The controlling effect applied to such proof is reflected in the court's finding that the merchandise "is not a chemical *compound* in the sense that salt and monosodium glutamate, its respective constituents compounds, are, but is a *mixture* in which the properties of the respective compounds have not lost their identity, but may be separated." Upon such a factual basis, the statutory construction hereinabove set forth was adopted.

To support its contention here, plaintiff places much stress on certain claims of the letters patent (exhibit 4) relating to the preparation of monosodium glutamate as a nutritive and flavoring substance, and the presence of salt therein. The basis for advancing argument concerning the process of manufacture appears in the following agreement between counsel in the *North Coast Importing Co.* case, *supra*, (R. 54):

* * *. And it is further stipulated that the ajinomoto covered by all of the cases herein consolidated was made and produced by the same people to whom the letters patent were issued, Exhibits 3 and 4, and made in the same manner described under those letters patent, Exhibits 3 and 4, and also in the manner described by John E. S. Han in his article, Exhibit 2.

A strict construction of the stipulation, upon which the instant case was submitted, would exclude the quoted agreement of counsel. However, plaintiff, in its reply brief, contends that "inasmuch as these exhibits were admitted without other limitation than that the involved ajinomoto was "made in the manner described" therein, it is submitted that all averments by the patentees which are incidental to or have a bearing upon the manner of manufacture constitute a portion of the record which may be considered by court or counsel, when material," and in a letter replying to the court's inquiry regarding defendant's attitude on the proposition counsel states "that it was never contended by the Government that the ajinomoto herein was made by any other method, and we are quite willing now to concede that it was made in a manner described in such letters patent (exhibits 3 and 4)." It is by virtue of this further agreement of counsel that the process of producing the instant merchandise is open for discussion.

The specifications of said letters patent (exhibit 4) include different methods for acquiring monosodium glutamate, the salt of glutamic acid, "the best flavoring substance hitherto produced, on account of its intense and pure meat-like taste," and, so far as the present issue is concerned, they support the following: Moist gluten from wheat is heated with hydrochloric acid for about 15 hours, the resulting liquid being filtered from the humuslike substance. The concentrated liquid is allowed to stand for a week "in which time the crystallization of glutamic acid hydrochloride is ended and the whole turns into crystalline magma." Separation of the crystals is effected with a centrifugal. The mother liquor is again crystallized and an additional quantity of crystals is obtained. The total yield of glutamic acid hydrochloride is "between 8 and 9 per cent of the moist gluten employed." Glutamic acid hydrochloride is neutralized to proportion with caustic soda producing "a mixture of monosodium glutamate and sodium chloride * * * containing about ¼ of the latter salt by weight. This mixture is nondeliquescent when free from other substances, and forms an excellent flavoring substance. The presence of common salt is not at all objectionable, as it rather enhances the flavoring power of the glutamate." Neither of the other two exhibits referred to (exhibits 2 and 3) contains anything that adds to this process of manufacture which is most favorable to plaintiff's contention in revealing, as it does, the presence of salt in the finished product.

There is, however, a substantial difference between the quantity of sodium chloride in the present merchandise and the amount mentioned in the letters patent (exhibit 4). Defendant seeks to explain this variance by saying that "the fact remains that the ajinomoto herein, which might at some stage of its manufacture have contained a considerable amount of sodium chloride (14 or 16 per centum),

such sodium chloride was purposely removed by a crystallization process, and that at the time of importation into the United States, the ajinomoto was a chemical compound consisting of monosodium glutamate with a negligible amount of sodium chloride (less than 1 per cent) as an impurity." But there is no evidence of record to substantiate this allegation, and without supporting proof the statement is without evidentiary value.

On the other hand, the claim in said letters patent that the presence of salt "rather enhances the flavoring power of the glutamate" is coupled with the conclusion that the finished product contains sodium chloride in quantity equal to one-fourth by weight of the monosodium glutamate—a condition that does not exist in the particular product under consideration. It will be noted, however, that such amount, one-fourth by weight, approximates the salt content of the ve-tsin involved in the *Quong* case, *supra*. The importance of this observation lies in its disclosure that the specifications of said letters patent cover general processes for acquiring desirable substances, and are not limited to the production of a definite product. Therefore, they do not warrant such finality as to make them all-conclusive, as plaintiff argues, in this case where a proper determination of the issue cannot be based on generalities but is dependent on a specific set of facts related to the commercial commodity, ajinomoto, in question. Hence, the claims of the letters patent (exhibits 3 and 4) and the statements in the magazine article (exhibit 2) assume relative unimportance in the light of oral testimony before us by virtue of the stipulation submitting the present case.

Dr. Carl Schmidt, a qualified biochemist with considerable research experience with ajinomoto and who wrote three scientific articles on the subject, testified that monosodium glutamate (the monosodium salt of glutamic acid) is the substantial ingredient of ajinomoto, and that sodium chloride (salt) and hygroscopic moisture occur as impurities. His testimony on the matter, developed on cross-examination by plaintiff's counsel, is as follows (R. 47):

X Q. Is this ajinomoto somewhat impure?—A. It contains a small amount of sodium chloride with the monosodium salt of glutamic acid.

X Q. Do you mean there are no impurities in ajinomoto?—A. I found some sodium chloride.

X Q. Do you mean there are no impurities in ajinomoto?—A. I found sodium chloride.

X Q. Did you test it for other impurities?—A. There is also a small amount of water.

The value of that testimony is greatly increased through the corroboration thereof by the Government chemist who analyzed the instant merchandise and who testified that he agreed with all of the conclusions expressed by Dr. Schmidt.

The preponderance of evidence in the record before us establishes that the ajinomoto in question is composed substantially entirely of monosodium glutamate (a chemical compound), and that negligible quantities of sodium chloride and hygroscopic moisture appear therein as impurities.

In view of this conclusion, none of the references cited by plaintiff's counsel, in their brief, have relevancy here. They include paragraphs of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001) and decisions of the courts, wherein a small percentage or minute quantity of an ingredient has been regarded as material toward classification of the whole. In each of the citations, however, the controlling facts and circumstances materially differed from those existing herein.

Whether or not plaintiff's contention shall prevail depends entirely upon the materiality of the *Quong* case, *supra*. Plaintiff has conceded this in the following language appearing in brief:

Herein plaintiff contends for the same conclusion [as in the *Quong* case, *supra*] on ajinomoto. So the crucial point is whether the salt therein is sufficient to warrant this court's favorable conclusion. That is, 16.75 per cent of common salt being sufficient to remove ve-tsin from paragraph 5, is not the same legally true of .9 per cent in ajinomoto?

For reasons hereinabove discussed, we hold the said case to be clearly distinguishable.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.